## TARIAN v ALLIANCE (City)

Ohio Appeals, 5th Dist, Stark Co

No 1877. Decided Oct 16, 1940

E. D. Bair, Alliance, and Harry Nusbaum, Canton, for plaintiff-appellant.

W. T. Martin, and J. B. Blumenstiel, Alliance, for defendant-appellee.

## OPINION

By LEMERT, J.

This is an action brought in the Common Pleas Court of Stark County by Joseph Tarian of Alliance, Ohio, against the City of Alliance, in which he claims damages against the defendant City of Alliance by way of an alleged nuisance in the maintenance and operation of a sewage treatment plant by the municipality.

Plaintiff alleges that he is the owner of some eighteen acres of land north-west of the City of Alliance, Ohio, which he has been operating as a park. The defendant operates a sewage disposal plant approximately one-half mile southeast of said premises and in the operation of said sewage disposal plant, the City of Alliance has wrongfully, improperly and illegally allowed and permitted a violently offensive, noxious and unhealthful gas, arising from said plant, to permeate the air over, around and about the premises owned by plaintiff, and causing numerous sewer flies to infest plaintiff's premises.

Plaintiff brought ction for the recovery of $25,000.00 amages. A verdict was rendered y the jury for the defendant.

Numerous grounds of error are complained of and we will deal with them in the order in which they were presented in oral argument in this case.

First, it is claimed that the Court erred in charging the jury by way of special request as follows:

"The Court says to you that the plaintiff in this case can not recover damages from the defendant because of a diminution in market value, if any, of his property, arising solely from the proximity of his property to the sewage treatment plant of the defendant."

From an examination of the record in this case we are of the opinion that there was no claim made by the plaintiff below and that there was not any issue before the Court that would warrant the Court in charging as to a diminution in market value of the land. The rule that a Court ought to adapt its charge to the issues made by the pleadings and the evidence forbids the introduction into the charge of instructions upon an issue not raised. 73 Oh St 1.

The Court in its general charge to the jury used the following language:

"The hurt or annoyance complained of in this particular law suit is hurt to the use of p intiff's property as a park. That is the reduction, the claimed reduction, or diminution of its use value,

its usable value, or its **rental** value as a park, these three terms being for practical purposes, synonymous."

It must be observed that the nuisance and injuries complained of herein are not of a permanent character but are of a temporary character and may be removed. Therefore, not being of a permanent character and no damages having been ▮▮▮▮▮▮▮ ▮ asked for the rental value of the park but merely damages by reason of plaintiff's business having fallen away and that plaintiff was unable to secure picnics or gatherings to come to his park, we are of the opinion that the use of the term "rental value", under the pleadings and evidence in this case, was prejudicially erroneous.

On the claimed error of misconduct of counsel for defendant, we note that the question in this case was whether or not the City of Alliance was guilty of a nuisance and had damaged plaintiff's property by reason of foul and obnoxious odors and sewer flies, etc. We note that defendant's counsel in the examination of the plaintiff, Joseph Tarian, questioned the plaintiff as to when he came to America and the witness stated he arrived in 1904 and that he then left Alliance and returned in 1913. He was asked when he came back and counsel at that time was admonished by the Court not to pursue this line of questioning too much. The witness was then allowed to testify as to what he did in 1913 and 1914 to 1920. It must be borne in mind that the damages asked and prayed for covers the years of 1933, 1934, 1935 up to 1937.

The witness was then asked:

"Q. When did you go into the liquor business?" Then there was an objection, which was overruled. Witness was then asked:

"Q. What business are you now in?
A. I help the boys who run a restaurant and have a beer license.
Q. Whose name is the beer license in?
A. That's 3.2 beer.

Q. And that is in your boys' name?
A. Yes.
Q. That is not in your name?
A. No."

Objection to this line of questioning was overruled. Witness was then asked:

"Q. Isn't it a fact that on July 27, 1923, in the Municipal Court in Alliance, you pleaded guilty to possession of a still?"

It certainly was not proper for defendant's counsel to ask plaintiff whether in 1923, ten years before the matters complained of, he did not plead guilty to possession of a still. The only purpose that this testimony could have would be to confuse and poison the minds of the jury and to create a hostile spirit and prejudice in the minds of the jury.

At this stage of the case we note that counsel for plaintiff complained and asked that defendant's counsel be admonished because of the kind and character of questions that were being asked the plaintiff. Following this, plaintiff was then asked:

"Q. Have you ever applied for a beer license?"

and after having asked plaintiff various questions, he was asked if he did not run a certain property known as the the Broadway Club, and was asked if his wife did not work in that place.

We are at a loss to understand why this line of questioning was followed up, when counsel for the defendant should have known that they were improper and there could have been no reason in asking them except to inflame the minds of the jurors.

It is our opinion that to allow a witness to be examined ▮▮▮▮▮▮ ▮ as to when he arrived in this country, where he was born, whether he was in the liquor business, whether his wife was in the liquor business, whether his son was in the liquor business, covering a period from ten to twenty years before the time complained of by plaintiff in his

petition as to when this nuisance was created, was beyond all bounds of fairness, especially when it dates back to 1904, and it could not help but create a feeling of prejudice in the minds of the jury. We believe it was prejudicially erroneous.

We further note that when Donald D. Heffelfinger, Superintendent of the sewage disposal plant, was called as a witness on behalf of the defendant, he was asked the following question:

"Q. You, as a sanitary engineer, and familiar with these sewage disposal plants and their operation,—what do you says as to whether, during this four year period the City of Alliance operated an efficient sewage disposal plant?"

There was an objection, which was overruled.

"A. Our plant has been very efficient."

It will be observed that by this question that the witness was asked the question which was the main ultimate fact in issue, a matter to  be determined by the jury. This we hold was prejudicial error.

On the matter of opinion as to ultimate issue of fact:

"The opinion evidence rule has never been so relaxed as to permit an opinion to be given on the precise ultimate fact in issue which is to be determined by the jury. Not even expert testimony is admissible for such purpose."
17. O. Jur., page 447.

"A question to a witness which calls for his opinion on the precise issue of fact which the jury is sworn to determine from the evidence, is incompet-nt."
'9 Oh St, page 279.

We are, therefore, of the opinion that for the reasons hereinbefore given that error intervened in the trial of this case, and the finding and the judgment of the Court below will be reversed and cause remanded to said Court for further proceedings according to law. We find no other errors in the record. Exceptions may be noted.

SHERICK, PJ. & MONTGOMERY, J., concur.